UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS


ROBBY MENDEZ,

Plaintiff,


v.

CITY OF TOPEKA, et al.,

Defendants.


Case No. 25-CV-4065-JWB-RES

---

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

## I.      Introduction

Plaintiff Robby Mendez respectfully submits this Response in Opposition to Defendants' Motion to Dismiss. Defendants assert that Plaintiff has failed to state a claim upon which relief can be granted. This argument ignores both the governing pleading standards and the well-pleaded allegations in the Complaint. At this preliminary stage, the Court's role is not to weigh competing evidence but to assess whether Plaintiff has set forth a plausible claim for relief under the Federal Rules of Civil Procedure. When the factual allegations are taken as true and all reasonable inferences are drawn in Plaintiff's favor, as required under Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), Plaintiff's claims readily meet this standard.

The Complaint lays out a detailed chronology establishing that Plaintiff exercised his rights under the Family and Medical Leave Act ("FMLA"), complained about unlawful interference and harassment, and then faced a sustained pattern of retaliatory actions by his supervisors and City officials, culminating in termination. These actions included denial of reinstatement despite

HR approval, repeated false investigations, denial of union representation, and pre-textual disciplinary measures. Notably, Defendant Alicia Guerrero-Chavez altered the standard investigative template and procedures solely for Plaintiff's case, further underscoring the retaliatory and irregular nature of the City's actions. The factual allegations also demonstrate a violation of Plaintiff's Fourteenth Amendment due process rights, as he was deprived of a constitutionally protected property interest in his employment without a fair and impartial process.

Defendants' motion largely mischaracterizes the Complaint as conclusory and deficient. To the contrary, Plaintiff has pleaded specific dates, events, and names of the individuals who carried out retaliatory actions, including Defendant Sylvia Davis's refusal to reinstate him after HR authorization, Defendant Alicia Guerrero-Chavez's failure to investigate retaliation complaints and submission of false investigative findings, and Defendant Robert Perez's approval of termination despite knowledge of irregularities. These allegations are more than sufficient to place Defendants on notice of the claims against them and to establish plausible entitlement to relief.

Dismissal at this stage would be particularly inappropriate where Plaintiff has documented internal findings substantiating his FMLA interference complaint, multiple retaliation complaints that went unaddressed, an investigative template altered specifically for his case, and a disciplinary process that departed from City policy. Plaintiff's allegations, taken as true, establish viable claims under both federal statute and the Constitution. Accordingly, Defendants' Motion to Dismiss should be denied in its entirety.

## II. Legal Standard

 When reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the complaint and view them in the light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678.

The Court's role at this stage is not to weigh evidence or resolve factual disputes, but only to determine whether the plaintiff has alleged facts that, if proven true, would entitle him to relief. Dismissal is inappropriate so long as the complaint provides "fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555.

Moreover, the pleading standard under Rule 8 is liberal. Specific facts are not necessary; the statement need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007). Thus, motions to dismiss are

generally disfavored and granted only in the rare case where the plaintiff can prove no set of facts in support of his claim.

---

### III.    Factual Background

1. Plaintiff was employed by the City of Topeka from October 2018 until his termination on May 24, 2025. He consistently received positive evaluations and recognition, including multiple Employee of the Month awards, and had no prior disciplinary history.

2. On August 23, 2023, Plaintiff applied for and was granted FMLA leave for the birth of his child. He took six weeks of leave and returned in October 2023 on an approved intermittent schedule. Plaintiff continued to take approved intermittent FMLA leave throughout 2023 and 2024, up until he was placed on administrative leave in July 2024.

3. Immediately upon his return, and while continuing to take intermittent FMLA leave, Plaintiff began experiencing harassment and interference by management related to his FMLA usage. In January 2024, he filed a formal FMLA interference complaint. That complaint was substantiated in March 2024, and a manager was disciplined.

4. Within weeks of the substantiation, Plaintiff became the target of multiple disciplinary investigations initiated by Sylvia Davis, beginning with theft and forgery allegations in April 2024. Neither allegation was substantiated, and Plaintiff was the only employee investigated despite multiple individuals having access.

5. Between April 2024 and May 2025, Plaintiff faced a series of retaliatory investigations and disciplinary actions, including prolonged administrative leave, denial of union representation during investigative interviews, and biased reports prepared by Internal Investigator Alicia Guerrero-Chavez. These actions frequently coincided with plaintiffs use of intermittent FMLA leave, underscoring the casual connection between his protected activity and defendants' adverse treatment.

6. Plaintiff's August 26, 2024 retaliation complaint—naming Sylvia Davis as responsible for continued retaliation and Alicia Guerrero-Chavez for due process violations was never investigated, despite being read aloud at his pre-termination hearing to ensure acknowledgment. The failure to investigate emboldened ongoing retaliation.

7. Plaintiff was repeatedly placed on administrative leave, denied overtime opportunities, deprived of KPERS contributions beginning in July 2024, and ultimately terminated based on investigative findings contradicted by surveillance video and omitted witness testimony.

---

# RESPONSE TO DEFENDANTS' "FACTUAL BACKGROUND"

Defendants' version of the factual record omits critical facts, mischaracterizes events, and disregards the context in which Plaintiff's claims arise:

- Retaliatory Investigations: Defendants attempt to portray disciplinary actions as routine and unrelated to Plaintiff's FMLA activity. In reality, the retaliatory pattern began immediately after Plaintiff's FMLA interference complaint was substantiated in March 2024. Within weeks, Plaintiff became the target of a string of baseless investigations initiated by Sylvia Davis, culminating in repeated administrative leaves and eventual termination. Notably, these were Plaintiff's first-ever career investigations during his long tenure with the City, underscoring that the disciplinary actions were not routine but instead arose only after he engaged in protected FMLA activity.
- Adverse Employment Actions: Defendants minimize the harm by arguing that only termination constitutes an adverse action. This ignores the extended administrative leaves beginning in July 2024 that deprived Plaintiff of wages, overtime opportunities, and KPERS retirement contributions. Courts have recognized that denial of pay, benefits, and opportunities constitutes adverse action even short of termination.
- Temporal Proximity: Defendants wrongly claim that Plaintiff's FMLA retaliation claim fails due to the time gap between Plaintiff's August 2023 FMLA leave and his May 2025 termination. This framing is misleading. Plaintiff remained on intermittent FMLA leave well into 2024, and the protected activity most directly connected to retaliation is Plaintiff's substantiated internal FMLA complaint in March 2024. The timing of retaliatory investigations immediately after that complaint supports a strong inference of causation.
- Biased Investigations: Defendants rely heavily on investigative reports authored by Alicia Guerrero-Chavez but fail to disclose that she altered the investigative template specifically for Plaintiff's case, excluded witnesses, denied union representation, and ignored exculpatory video evidence. Reports falsely claiming Plaintiff was the "only person" in a location were directly contradicted by surveillance footage.
- Due Process Failures: Defendants claim Plaintiff was afforded "abundant due process." In reality, HR Director Pamela Foster twice refused to approve termination, raised concerns of retaliation, and resigned shortly thereafter. The ultimate termination was rubber-stamped by City Manager Robert Perez, who did not attend Plaintiff's hearing and relied solely on flawed, incomplete reports.
- Ratification of Misconduct: Defendants suggest City leadership acted neutrally, yet Perez promoted Guerrero-Chavez to Human Resources Director immediately after Plaintiff's termination—despite her documented misconduct in Plaintiff's investigation. This promotion ratified and rewarded her biased conduct, further strengthening the link between Plaintiff's protected activity and the retaliatory termination.

Defendants' selective summary cannot erase the fact that Plaintiff's retaliation claims are supported by direct evidence of harassment, ignored complaints, altered investigative procedures, and false findings contradicted by video and other evidence.

## IV. Argument and Authorities

### A. PLAINTIFF'S RESPONSE TO DEFENDANTS' ARGUMENT THAT PLAINTIFF FAILS TO STATE A PRIMA FACIE CASE OF FMLA RETALIATION

Defendants' assertion that Plaintiff fails to state a prima facie case of FMLA retaliation mischaracterizes both the factual record and the pleading standard under Rule 12(b)(6). Plaintiff's Amended Complaint sets forth ample factual allegations establishing each element of an FMLA retaliation claim: (1) engagement in protected activity; (2) adverse employment actions; and (3) a causal connection between the two.

### 1. Protected Activity

Plaintiff clearly engaged in protected activity under the FMLA by (a) taking approved leave for the birth of his child in August 2023; (b) returning on an intermittent leave schedule through July 2024; and (c) filing an internal complaint in January 2024 alleging FMLA interference and harassment that was later substantiated by the City itself (¶¶ 9–13, 35–36). These activities are expressly protected under 29 U.S.C. § 2615(b).

### 2. Adverse Employment Actions

Defendants' narrow claim that only Plaintiff's termination could constitute an "adverse employment action" is legally and factually incorrect. The Tenth Circuit and the Supreme Court both recognize that any materially adverse action that might dissuade a reasonable worker from engaging in protected activity qualifies. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171 (10th Cir. 2006).

The Amended Complaint alleges multiple adverse actions beyond termination:

- Plaintiff was falsely accused of theft and forgery immediately following his protected complaints (¶ 14);
- He was placed on administrative leave on July 1, 2024 and denied reinstatement for nearly eight months, despite an HR Director's order to return him to work (¶¶ 16–20, 45);
- He was denied union representation, a fundamental procedural safeguard, during an investigative interview that led to discipline (¶ 15A, 51);
- He was subjected to fabricated or biased investigations, including one where internal video evidence disproved the City's conclusions (¶¶ 23A, 31–33); and
- He was terminated on May 24, 2025 following an incomplete and procedurally defective pre-termination hearing (¶¶ 25–26, 55–56).

These actions caused tangible harm—including lost overtime, lost KPERS contributions, and reputational damage (¶¶ 19–20, 58)—and therefore easily satisfy the "adverse employment action" element. Courts in this District have found that placing an employee on unpaid or extended administrative leave, suspensions, or initiating unwarranted investigations can qualify as adverse actions when done in retaliation for protected conduct. Metzler, 464 F.3d at 1171; Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1288 (10th Cir. 2007).

## 3. Causal Connection

Defendants' argument that a seven-month gap defeats causation overlooks the ongoing chain of retaliatory conduct spanning directly from Plaintiff's substantiated FMLA complaint through his eventual termination. Courts do not view temporal proximity in isolation where a pattern of escalating retaliatory behavior bridges the time gap. Marx v. Schnuck Mkts., Inc., 76 F.3d 324, 329 (10th Cir. 1996) (causal connection may be shown by "pattern of retaliatory conduct beginning soon after the protected activity").

Here, Plaintiff alleged:

- Harassment and scrutiny began immediately after his return from FMLA leave in October 2023 (¶ 11);
- Retaliatory investigations began within weeks of the City's March 2024 substantiation of his FMLA interference complaint (¶¶ 14–15, 29–33);
- His internal retaliation complaint of August 26, 2024 was ignored (¶ 16), and he remained on forced leave until March 2025; and
- His ultimate termination followed two biased investigations conducted by the same investigator previously accused of misconduct (¶¶ 23A–26A).

This continuous sequence of retaliation directly connects Plaintiff's protected FMLA activity to his termination. The promotion of Defendant Chavez immediately after issuing the flawed investigative report used to justify Plaintiff's termination (¶ 26A) further strengthens the inference of retaliatory motive.

## 4. Legal Standard at Pleading Stage

Under Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), a plaintiff need not establish a full prima facie case at the pleading stage; he must only allege facts that make retaliation "plausible." Plaintiff's detailed chronology, corroborated by substantiated internal findings and specific adverse actions, easily satisfies this threshold. Dismissal is improper where the complaint presents a coherent factual basis supporting each element, as it does here.

**5. Conclusion**

Plaintiff's Amended Complaint alleges:

- Protected conduct (FMLA leave and formal complaints);
- Multiple materially adverse actions (false accusations, denial of representation, prolonged administrative leave, and termination); and
- A causal link demonstrated by timing, escalation, and direct participation of decision-makers previously implicated in retaliation.

Accordingly, Defendants' argument fails under both the McDonnell Douglas framework and Rule 12(b)(6). Plaintiff respectfully requests that the Court deny the motion to dismiss Count I (FMLA Retaliation).

# B. Plaintiff States a Plausible Claim for FMLA Interference

Defendants incorrectly assert that Plaintiff's FMLA interference claim fails because he was never denied leave. This mischaracterizes both the law and the well-pled facts. Under the Family and Medical Leave Act, interference occurs not only when leave is expressly denied, but also when an employer discourages, restrains, or fails to restore an employee to his position following protected leave. 29 U.S.C. § 2615(a)(1); Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1180 (10th Cir. 2006); Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960 (10th Cir. 2002).

## 1. Plaintiff Alleges Conduct That Interfered With His FMLA Rights

A. Discouragement and Hindrance of Intermittent Leave.

Plaintiff alleges that after returning from approved FMLA leave in October 2023, management scrutinized and discouraged his intermittent leave use. (Amd. Comp. ¶¶ 11, 43–44). He frequently had to cancel or reschedule approved time off because the City refused to arrange coverage, and supervisors fostered hostility toward his use of leave. (¶ 10A). The Tenth Circuit recognizes that actions which would deter or discourage a reasonable employee from using FMLA leave constitute actionable interference. Gunnell v. Utah Valley State College, 152 F.3d 1253, 1262 (10th Cir. 1998).

B. Failure to Reinstate After Protected Leave.

Even more significant, Plaintiff alleges that after the Director of Human Resources, Pamela Foster, ordered his reinstatement on October 18, 2024, Defendant Sylvia Davis refused to return him to work and instead kept him on "administrative leave" until March 24, 2025. (¶¶ 16, 18–19, 45). The FMLA requires an employer to restore an employee to the same or equivalent position upon return from leave. 29 U.S.C. § 2614(a)(1). The City's refusal to reinstate Plaintiff for nearly five months, despite an express directive from HR, is a constructive denial of his FMLA reinstatement rights and squarely fits the definition of interference. Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 877 (10th Cir. 2004) (interference where employee was not returned to equivalent position).

C.  Material Prejudice.

During this extended exclusion, Plaintiff lost overtime income and employer retirement contributions and was publicly stigmatized. (¶¶ 19–20, 48). These financial and reputational losses satisfy the prejudice requirement under Metzler, 464 F.3d at 1180.

## 2.  Plaintiff's Interference Claim Is Distinct From Retaliation

While both claims arise from the same factual sequence, FMLA interference does not require proof of retaliatory intent—only that the employer's actions had the effect of denying or restraining FMLA rights. Id. The Amended Complaint pleads such effects in detail: (1) discouragement of intermittent leave, (2) prolonged denial of reinstatement, and (3) deprivation of pay and benefits. These factual allegations, accepted as true, plausibly state a claim for interference independent of Plaintiff's retaliation theory.

## 3.  The Pleadings Easily Meet Rule 12(b)(6)

Taken as true, Plaintiff's allegations permit the reasonable inference that Defendants interfered with, restrained, and denied his FMLA rights. At this stage, he need not prove causation or intent—only facts showing that his ability to exercise FMLA protections was compromised. Twombly and Iqbal require plausibility, not evidentiary proof. Plaintiff has more than met that standard.

---

Accordingly, the City's motion to dismiss Count II should be denied.

# C. Plaintiff Has Adequately Pleaded a Valid Claim Under 42 U.S.C. § 1983 for Denial of Procedural Due Process

## 1. Plaintiff properly alleges deprivation of a protected property interest without fair process

(1) Defendants' assertion that Plaintiff "received abundant due process" misstates the record.

The Amended Complaint (¶¶ 49–58) clearly alleges that Plaintiff had a recognized property interest in his continued public employment under Kansas law and the City's own personnel rules, and that Defendants Davis, Guerrero-Chavez, and Perez—acting under color of state law—deprived him of that interest through a procedurally defective and biased disciplinary process. Plaintiff was

 (1) denied union representation during an investigative interview (¶ 51),

(2) denied reassignment of a biased investigator (¶ 52),

(3) subjected to fabricated and misleading evidence (¶¶ 23A, 53), and

(4) terminated after a hearing with no neutral decision-maker because the HR Director resigned before issuing findings (¶ 25).

City Manager Perez, who had not attended the hearing or reviewed the record, approved the termination anyway (¶ 55).

These allegations—accepted as true—state a plausible violation of procedural due process under Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).

## 2. The City of Topeka is liable under Monell

Defendants wrongly contend that the Complaint lacks allegations of a municipal policy or custom.

In fact, Plaintiff alleges multiple policy-level decisions and ratifications that constitute municipal action:

1. Refusal to Reinstate — Director Sylvia Davis ignored HR's reinstatement directive for over seven months (¶¶ 18–19).
2. Final Policymaker Ratification — City Manager Robert Perez ratified the procedurally tainted termination without review (¶ 55).
3. Systemic Lack of Oversight — The City allowed Investigator Guerrero-Chavez to conduct all investigations without supervision despite prior documented bias (¶¶ 15A–15B, 23–24).
4. Pattern of Retaliatory Discipline — A sustained practice of baseless investigations following Plaintiff's substantiated FMLA complaint (¶¶ 29–34).

These facts plausibly allege that the City maintained an informal custom amounting to a widespread practice, and that the final decisions of Davis and Perez—both acting with policymaking authority—were the moving force behind the due-process violation.  See Myers v. Okla. Cty. Bd. of Cty. Comm'rs, 151 F.3d 1313, 1318 (10th Cir. 1998); Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th Cir. 2010).

### 3. Qualified immunity does not shield the individual defendants

Qualified immunity protects officials only where the facts alleged do not show violation of a clearly established right.  Pearson v. Callahan, 555 U.S. 223, 232 (2009).

Here, Plaintiff alleges conduct that plainly violated well-established law:

- Alicia Guerrero-Chavez denied union representation, falsified investigatory findings, and omitted exculpatory witnesses despite knowing video evidence disproved her conclusion (¶¶ 15A, 23A, 24, 53).
- Sylvia Davis overrode the HR Director's reinstatement order and kept Plaintiff on a de facto suspension for seven months without hearing (¶¶ 18–19).
- Robert Perez approved the termination without attending the hearing or reviewing evidence and promoted the investigator whose flawed report formed the basis of termination (¶ 26A, 55).

The right to a fair and impartial hearing before deprivation of employment was clearly established long before these events.  Loudermill, 470 U.S. at 546; Trask v. Franco, 446 F.3d 1036, 1043 (10th Cir. 2006).  A reasonable official would have known that denying representation, ignoring HR's reinstatement directive, and approving termination without review violated due-process guarantees.

Accordingly, dismissal on qualified-immunity grounds is improper at the pleading stage.

### 4.  Plaintiff lacked any meaningful post-termination remedy

Defendants mischaracterize the union grievance process as an adequate post-termination remedy.  The Amended Complaint (¶ 27) alleges that Plaintiff was informed his termination eliminated any right to arbitration and that the union would not fund post-termination relief.  Because no grievance or arbitration was available, Plaintiff was left with no post-deprivation remedy at all.  See Hennigh v. City of Shawnee, 155 F.3d 1249, 1256 (10th Cir. 1998) (grievance sufficiency depends on availability and independence).  Once the City foreclosed that process, the deprivation was complete and actionable under § 1983.

### 5.  Each named defendant's actions independently violated due-process rights

Defendants' assertion that "there is no evidence" each acted improperly ignores the specific factual allegations:

- Perez: approved termination without findings (¶ 55) and ratified Guerrero-Chavez's defective investigation (¶ 26A).
- Davis: defied HR's reinstatement order (¶¶ 18–19) and refused to allow return to work.
- Guerrero-Chavez: denied representation, falsified findings, and suppressed evidence (¶¶ 15A, 23A, 24, 33, 53).

Each acted under color of state law and personally participated in depriving Plaintiff of a constitutionally protected interest.

---

For these reasons, Plaintiff's § 1983 claim is sufficiently pleaded against both the City and the individual defendants. The facts alleged demonstrate deprivation of a protected property interest through biased, retaliatory, and procedurally defective actions, and they overcome qualified-immunity defenses at this stage. Accordingly, Defendants' motion to dismiss should be denied.

# D. Plaintiff States Plausible Individual-Capacity Claims Against Defendants Davis, Guerrero-Chavez, and Perez

## 1. Sylvia Davis personally participated in retaliatory and unconstitutional conduct

Defendant Davis's liability is well-pleaded. After Human Resources Director Pamela Foster expressly refused to approve Plaintiff's termination on October 18, 2024 (¶ 18), Davis ignored that directive and kept Plaintiff on involuntary administrative leave for more than seven months (¶¶ 18–19). During that period Plaintiff lost overtime, retirement contributions, and the ability to work—effectively a suspension without process. The Tenth Circuit has recognized that such actions implicate both FMLA retaliation and due-process violations where a supervisor extends or enforces discipline without lawful basis. See Hennigh v. City of Shawnee, 155 F.3d 1249, 1256 (10th Cir. 1998).

Davis's continued refusal to reinstate Plaintiff after HR directed reinstatement demonstrates intentional retaliation and deliberate indifference to due-process requirements. Her actions were not discretionary personnel judgments but targeted responses to Plaintiff's protected FMLA complaints, making qualified immunity unavailable. See Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006) (qualified immunity inapplicable where official retaliates for protected conduct).

## 2. Alicia Guerrero-Chavez is liable for interference, retaliation, and denial of due process

Defendant Guerrero-Chavez's conduct went far beyond routine investigation. The Amended Complaint alleges that she

1. Denied union representation during an active disciplinary interview (¶ 15A);
2. Altered investigative notice templates to remove the right to representation (¶ 32);
3. Ignored requests for a neutral investigator and refused to recuse despite a clear conflict (¶ 15B);
4. Omitted favorable witnesses and falsified findings, asserting Plaintiff was the only person in a restroom despite video proving otherwise (¶¶ 23A, 31, 53); and
5. Issued reports framed to confirm guilt rather than discover facts (¶ 33).

These actions directly interfered with Plaintiff's FMLA rights and deprived him of a fair hearing. The right to union representation during investigatory questioning and the right to an impartial investigation preceding termination are both clearly established under City policy and constitutional due-process principles. A reasonable investigator would have known that altering procedures to prevent representation and falsifying evidence violates those rights. Guerrero-Chavez therefore is not entitled to qualified immunity.

## 3. Robert Perez ratified unconstitutional actions and perpetuated retaliation

Defendant Perez personally approved Plaintiff's termination despite never attending the pre-termination hearing and never reviewing the evidentiary record (¶ 55). By doing so, he ratified a process known to be incomplete after the HR Director's resignation (¶ 25). Immediately thereafter, he promoted Investigator Guerrero-Chavez—the very official whose flawed report had justified the firing (¶ 26A). This sequence plausibly shows deliberate indifference and municipal ratification of unconstitutional conduct. See Bryson v. City of Oklahoma City, 627 F.3d 784, 789 (10th Cir. 2010) (final policymaker's ratification creates § 1983 liability).

Perez's approval of termination without findings and his promotion of the investigator responsible for procedural violations constitute personal participation in the deprivation of Plaintiff's property interest and retaliation for his protected FMLA complaints. Qualified immunity does not shield a policymaker who knowingly ratifies or rewards unlawful conduct. See Snell v. Tunnell, 920 F.2d 673, 700 (10th Cir. 1990).

## 4. Each defendant's actions support liability under both the FMLA and § 1983

Defendants misstate the record by asserting that "no one interfered" with Plaintiff's FMLA rights except a previously disciplined manager. The Amended Complaint alleges—and must be accepted as true—that after the City substantiated Plaintiff's initial FMLA-interference complaint, these three defendants collectively engaged in retaliatory conduct that culminated in termination:

- Guerrero-Chavez conducted biased investigations;
- Davis refused reinstatement and pursued termination; and
- Perez upheld the tainted outcome and rewarded the wrongdoer.

The FMLA's definition of "employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees." 29 U.S.C. § 2611(4)(A)(ii)(I). District courts in Kansas have repeatedly held that individual supervisors exercising control over discipline and reinstatement decisions can be personally liable. See Hager v. City of West Peoria, 84 F.3d 865, 868 (7th Cir. 1996); Smith v. West Lake Enterprises, 374 F. Supp. 2d 1094 (D. Kan. 2005). Davis, Chavez, and Perez each exercised that control here.

## 5. Plaintiff's claims are supported by detailed factual allegations, not speculation

Defendants' suggestion that the Complaint is "unsupported" ignores dozens of specific, chronological facts (¶¶ 8–34, 49–58). Plaintiff names dates, actions, and participants, cites

written directives that were ignored, and references video and witness evidence contradicting the City's findings. These factual pleadings far exceed the plausibility threshold under Ashcroft v. Iqbal, 556 U.S. 662 (2009). When accepted as true—as required on a motion to dismiss—they establish retaliation, fabrication of evidence, and deprivation of a fair hearing.

Accordingly, the Amended Complaint states valid individual-capacity claims under both the FMLA and 42 U.S.C. § 1983 against Defendants Davis, Guerrero-Chavez, and Perez. Each personally participated in, ratified, or perpetuated retaliatory and constitutionally deficient actions that caused Plaintiff's damages. Their qualified-immunity defense fails, and dismissal of the individual defendants is unwarranted.

## V. Plaintiff's Damages Allegations Are Not Separate Tort Claims and Are Properly Before This Court

Defendants' argument under K.S.A. 12-105b(d) is misplaced. Plaintiff has not asserted any state-law tort claims; rather, the "Emotional Distress and Mental Health Harm" and "Reputational Harm and Loss of Advancement" subsections in the Amended Complaint (p. 12) are part of the damages sought for violations of federal law—specifically the Family and Medical Leave Act and 42 U.S.C. § 1983.

The Kansas Tort Claims Act's notice requirement applies only to independent tort causes of action brought under Kansas law. It does not apply to damages flowing from federal statutory or constitutional violations. See Jones v. Wildgen, 320 F. Supp. 2d 1116, 1123 (D. Kan. 2004) (holding that K.S.A. 12-105b(d) notice "is not required for federal claims, even when brought against a municipality"); Hopkins v. State of Kansas, 237 F. Supp. 2d 1278, 1294 (D. Kan. 2002) (same).

Plaintiff seeks compensatory and punitive damages within the context of his federal FMLA and § 1983 causes of action, not as stand-alone torts. The damages subsections merely itemize the categories of harm—economic, emotional, and reputational—resulting from Defendants' retaliatory and unconstitutional conduct. Because the Amended Complaint contains no state-law tort count, K.S.A. 12-105b(d) is inapplicable, and this Court retains full jurisdiction over all claims.

Even if the Court were to construe these damages as partially arising under Kansas law, Plaintiff's pro se pleading should be liberally construed, and dismissal for lack of a pre-suit notice would be premature where discovery has not yet confirmed the scope or source of the damages. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (pro se pleadings must be read to state any claim supported by the facts alleged).

## VI. Conclusion

For the reasons stated herein and in preceding sections, Plaintiff's Amended Complaint sets forth detailed factual allegations supporting all three counts:

1. FMLA Retaliation under 29 U.S.C. § 2615(b);
2. FMLA Interference under 29 U.S.C. § 2615(a)(1); and
3. Denial of Procedural Due Process under 42 U.S.C. § 1983.

The Amended Complaint plausibly alleges that Defendants Davis, Guerrero-Chavez, and Perez personally participated in, ratified, or perpetuated retaliatory and procedurally deficient actions that deprived Plaintiff of protected rights.  Each claim satisfies federal pleading standards under Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic v. Twombly, 550 U.S. 544 (2007).  The FMLA and § 1983 counts are independent of the Kansas Tort Claims Act and require no state-law notice.

Accordingly, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety and allow this matter to proceed to discovery and trial on the merits.

---

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2025, I filed the foregoing Plaintiff's Response in Opposition to Defendants' Motion to Dismiss with the Clerk of the Court using the email system, which will send notice of electronic filing to the following counsel of record:

Nick Jefferson

Attorney for Defendants

City of Topeka Legal Department

215 SE 7th Street

Topeka, KS 66603

Email: njefferson@topeka.org

**Signature Block**

Respectfully submitted,

*/s/ Robby Mendez*

Robby Mendez

2104 SE 21st St.

Topeka, KS 66607

robbymendez131313@gmail.com

Plaintiff, Pro Se