IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBBY MENDEZ,

        Plaintiff,

v.                                                 Case No. 25-4065-JWB

CITY OF TOPEKA, et al.,

        Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' motion to dismiss and Plaintiff's motion to supplement. (Docs. 20, 24.) The motions have been fully briefed and are ripe for decision. (Docs. 22, 23, 26, 27.) The motion to dismiss is GRANTED IN PART and DENIED IN PART and Plaintiff's motion to supplement is DENIED for the reasons stated herein.

**I.**     **Facts**

The facts set forth herein are taken from the amended complaint. (Doc. 18.) Plaintiff was employed by Defendant City of Topeka, Kanas ("the City") in the Water Distribution Division. Plaintiff began his employment with the City in 2018. On August 23, 2023, Plaintiff applied for leave under the Family Medical Leave Act ("FMLA") for the birth of his child. (*Id.* ¶ 9.) Plaintiff took six weeks of approved FMLA leave and was also granted intermittent FMLA leave up until July 1, 2024. After returning from his initial leave, Plaintiff received management approval for intermittent leave but he often had to cancel the leave because management failed to provide coverage. (*Id.* ¶ 10A.) After his return in October 2023, Plaintiff's supervisor scrutinized his use of leave, undermined his assignments, and made demeaning or hostile remarks toward him. In January 2024, Plaintiff filed an internal complaint against management for FMLA interference and

1

harassment.  In March 2024, the complaint was substantiated and a manager was disciplined.  (*Id.* ¶ 12.)  The investigation was conducted by Defendant Alicia Chavez, the City Investigator.  (Doc. 1-3.)[1]  In April 2024, "management accused Plaintiff of theft that allegedly occurred in September 2023 and also made allegations of forgery."  (Doc. 18 ¶ 14.)  These allegations were investigated by the Topeka Police Department and were not substantiated.  No other employees were investigated.  Between April and July 2024, Plaintiff was falsely accused of additional rule violations.  In June 2024, both Plaintiff and Pete Vobach made allegations of violations of the City's Professional Integrity and Harassment policy.  (Doc. 1-15 at 2.)  Defendant Chavez was assigned to investigate this matter.  Although Plaintiff requested a union representative, Chavez denied the request.  (Doc. 18 ¶ 15A.)  Chavez's letter to Plaintiff indicated that she believed that he had withdrawn his union membership at the time and, as a result, would not have access to a union representative.  (Doc. 1-15 at 2.)  Chavez told Plaintiff that if this was incorrect he could request union representation.  (*Id.*)

On July 1, 2024, Plaintiff was placed on administrative leave.  The City advised Plaintiff that he was on leave because he was involved in an altercation where he shoved another co-worker.  (Doc. 1-6 at 18.) Plaintiff's description of the events stated that the co-worker verbally attacked him and then bumped him in his chest.  (*Id.* at 3.)  Plaintiff "pushed him away" after he did this. (*Id.* at 4.)  The investigation into the altercation was conducted by Defendant Chavez.  On August 26, 2024, Plaintiff submitted an internal complaint of continued FMLA retaliation.  (*Id*. at 1.) Plaintiff named Defendant Sylvia Davis, Director of Utilities, as the individual who was taking retaliatory actions.  Plaintiff's complaint was not investigated.  On September 3, a pre-termination

---

[1] The court may consider documents filed contemporaneously with Plaintiff's complaint without converting the motion to one for summary judgment as the parties do not dispute the authenticity of the exhibits.  *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

2

hearing was held. Pamela Foster, the Director of Human Resources at the time, conducted the hearing. On October 18, she issued findings and rejected Davis's recommendation to terminate Plaintiff. Foster stated that she was sending "this matter back to management to determine a non-termination resolution." (Doc. 1-7 at 2.) Plaintiff was not immediately reinstated.

During his leave, Plaintiff was denied his retirement contributions and the ability to earn overtime. Ultimately, Davis imposed a five-day unpaid suspension from March 17 through March 21, 2025. (Doc. 1-8 at 2.) On March 24, 2025, Plaintiff was allowed to return to work. The next day, Plaintiff was again accused of rule violations and placed on leave. According to the City's notice to Plaintiff, the City stated that it was investigating a report that Plaintiff had a heated verbal exchange with Cole Engle on March 25. (Doc. 1-9 at 2.) After her investigation, Chavez found that Plaintiff poured bleach in another employee's locker which violated workplace policies. (Doc. 1-10 at 2.) Plaintiff alleges that he had exculpatory video evidence that he was not involved in the incident because another employee entered the locker room after he did.[2] An exhibit to Plaintiff's original complaint, however, makes clear that Chavez reviewed the video footage. (Doc. 1-10.) Plaintiff also had a witness who had information regarding the allegations but asserts that Chavez failed to follow up with this information. (Doc. 18 ¶ 24.) On April 18, a second pre-termination hearing was conducted by Foster. Three days later and prior to issuing a decision, Foster resigned. On May 24, Plaintiff was terminated. Defendant Robert Perez, the City Manager, approved the termination recommendation after reviewing all of the hearing evidence. (*Id.* ¶ 26; Doc. 1-12.)

After his termination, Plaintiff attempted to pursue a grievance through the union but was told that he did not have standing to pursue the grievance. Plaintiff filed this action on July 2,

---

[2] Plaintiff alleges that Chavez falsely concluded that he was the only one to enter the locker room during the time period. (Doc. 18 ¶ 23A.) This contradicts Plaintiff's exhibit attached to his original complaint which clearly states that Chavez reviewed the footage and identified the time periods that all individuals entered and exited the locker room. (Doc. 1-10 at 3.)

3

2025.  (Doc. 1.)  Plaintiff asserts claims of FMLA retaliation, FMLA interference, and a violation of due process against the City, Chavez, Davis, and Perez.  Defendants move to dismiss on the basis that Plaintiff's amended complaint fails to state a claim.  (Doc. 20.)  The individual Defendants also assert that they are entitled to qualified immunity.

After the motion to dismiss was fully briefed, Plaintiff filed a motion to file a supplemental complaint.  (Doc. 24.)  Plaintiff seeks leave to add facts concerning conduct that was allegedly undertaken by Chavez in a different employment matter involving the City's police department and is currently being litigated in this district, *Cross v. City of Topeka*, Case No. 24-4092.  (Doc. 24-1.)  Based on Plaintiff's motion, it is clear that Plaintiff has no personal knowledge of these allegations but seeks to adopt them as facts in his own complaint.  Notably, the *Cross* matter is currently pending and there has not been a final adjudication.  Plaintiff's motion is denied as it is clear that he merely seeks to adopt facts that have been alleged in an ongoing matter and of which he lacks personal knowledge.

**II.     Standard**

Because Plaintiff is proceeding pro se, the court is to liberally construe his filings.  *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).  However, liberally construing filings does not mean supplying additional factual allegations or constructing a legal theory on Plaintiff's behalf.  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).  In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).  All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff.  *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).

Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

### III. Analysis

#### A. FMLA Retaliation

The FMLA provides that a qualifying employee is entitled to "take up to twelve weeks of unpaid leave, without fear of termination." *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 539 (10th Cir. 2014). It is a violation of the FMLA to retaliate against an employee who takes FMLA leave. *Id.* at 539–40 (citing 29 U.S.C. § 2615(a)(2); *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)). To establish a case of retaliation, Plaintiff must show (1) he "engaged in a protected activity;" (2) Defendants took materially adverse action(s) against him; and (3) the "circumstances permit an inference of causal connection between the action and the FMLA leave, in this case based on temporal proximity." *Id.*

Here, Defendants argue for dismissal on the basis that the only materially adverse action taken by the City was termination and the termination was too far removed from his protected activity of FMLA leave. In response, Plaintiff asserts that the adverse actions included false accusations of workplace violations, placement on administrative leave, denial of a union representative, biased investigations, and his termination.

Turning to the elements, it is clear that Plaintiff engaged in protected activity. He was on FMLA leave until October 2023 and then took intermittent FMLA leave up until June 2024. Plaintiff also filed an internal complaint of FMLA retaliation in January 2024 and that complaint was found to be substantiated in March 2024. Plaintiff also submitted another complaint of FMLA retaliation on August 26. The court finds that all of these actions constitute protected activity. *See id.* (holding that protected activity includes taking FMLA leave); *Austin v. Jostens, Inc.*, 2008 WL

5

4642277, at *11 (D. Kan. Oct. 16, 2008) (discussing that protected FMLA activity includes informal complaints) (citing *Jeseritz v. Potter*, 282 F.3d 542, 548 (8th Cir. 2002)).

Next, Plaintiff asserts that the adverse actions include false accusations of workplace violations, placement on administrative leave, denial of a union representative, biased investigations, and his termination. For an employment action to be materially adverse, it must be severe enough that it could "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). "A strong indicator that a challenged employment action is adverse is that the action causes harm to future employment prospects." *Braxton v. Nortek Air Sols., LLC*, 769 F. App'x 600, 605 (10th Cir. 2019). Here, Plaintiff alleges that he was falsely accused of crimes in April 2024 which was investigated by the police. This satisfies a materially adverse action at this stage of the proceeding as a criminal investigation could cause harm to future employment and carries a risk of damage to reputation. *See Annett v. Univ. of Kansas*, 371 F.3d 1233, 1239 (10th Cir. 2004). Next, Plaintiff asserts that his placement on administrative leave was a materially adverse action because he lost money on overtime and retirement contributions. Because the administrative leave allegedly impacted Plaintiff financially, he has plausibly alleged a materially adverse action. Plaintiff's allegations concerning the denial of a union representative and biased investigations do not rise to the level of an adverse action. Finally, his termination is clearly an adverse action.

This leaves the court with the question of whether these three adverse actions were causally related to his protected activity. The court may infer causation when there is a close temporal proximity between the protected activity and the adverse action. *See e.g., Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) ("If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection."); *Anderson v. Coors Brewing Co.*, 181 F.3d

1171, 1179 (10th Cir. 1999) (noting that a three-month period is insufficient to establish causation). If there is not a close temporal proximity, a plaintiff needs to allege additional evidence to establish causation. *Id.*

Defendants' motion asserts that there is no temporal proximity because the time period at issue is the date of his first FMLA leave to his termination, which is more than one year. (Doc. 20 at 6.) Contrary to Defendants' assertions, however, the court found that Plaintiff engaged in protected activity on multiple occasions. The court also determined that Plaintiff suffered three different adverse actions. Given the clear overlap of the protected activity and alleged adverse actions, the court finds that Plaintiff has plausibly alleged causation at this stage of the proceedings.

Therefore, the motion to dismiss this claim against the City is denied. The court will address the liability of the individual Defendants *infra*.

### B. FMLA Interference

Next, Defendants seek to dismiss Plaintiff's claim of FMLA interference. The FMLA provides that eligible employees of covered employers may have up to twelve weeks of unpaid leave for serious health conditions and be reinstated to a former position or an equivalent one upon return from leave. 29 U.S.C. §§ 2612(a)(1), 2614(a). Under the FMLA, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." *Id.* § 2615(a)(1). To prevail on a claim based on an interference or entitlement theory, Plaintiff must demonstrate: "(1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights." *Jones v. Denver Public Schools*, 427 F.3d 1315, 1319 (10th Cir. 2005). The first element is not in dispute here.

7

Defendants move to dismiss this count on the basis that Plaintiff has not plausibly alleged interference with FMLA leave. Defendants assert that Plaintiff was granted leave and he used his leave with management approval. Defendants argue that Plaintiff unilaterally canceled his leave after it was approved. In response, Plaintiff argues that Defendants discouraged and hindered his leave and failed to reinstate him after his leave. In support, Plaintiff cites to Tenth Circuit authority that interference occurs when an employer discourages or restrains protected leave. (Doc. 22 at 7.) While those cases do discuss FMLA interference, they do not stand for the proposition that the discouragement of leave as opposed to an outright denial is sufficient for an adverse action.[3] Rather, to satisfy the second element, "the employee must show that [he] was prevented from taking the full 12 weeks[ ] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014). Plaintiff has not alleged that he was prevented from taking leave or denied permission to take leave. Rather, he alleged that he did not take approved leave because he did not believe that the City was going to provide coverage for his absence. This allegation does not plausibly allege an adverse action by the City.

Plaintiff also asserts that he was denied reinstatement upon leave. Plaintiff's allegations, however, do not support such a finding. Rather, Plaintiff was back at work after his leave when he was placed on administrative leave and he had also returned to work prior to his termination. Therefore, Plaintiff has not plausibly alleged that Defendants interfered with his right to take FMLA leave. Defendants' motion to dismiss this claim is granted.

---

[3] The court notes that Defendants take the position that Plaintiff's brief was drafted with the assistance of artificial intelligence ("AI") and ask the court to require Plaintiff to disclose whether he utilized an AI program and then certify compliance with this court's local rules and the Federal Rules of Civil Procedure. Those rules, however, do not impose any additional compliance in the event a party utilized AI to draft a brief. This court, however, admonishes Plaintiff to verify all statements and case citations in any AI created brief. Should Plaintiff file a brief with inaccurate statements or case citations, Plaintiff could be subject to sanctions under Rule 11.

### C. Due Process

Plaintiff has asserted a claim under 42 U.S.C. § 1983 for the alleged violation of his right to due process. Plaintiff asserts that he was deprived of due process in connection with his termination in that he was denied union representation, denied reassignment of a biased investigator, subjected to fabricated evidence, and terminated by Perez instead of a neutral decision maker. (Docs. 18 at 10; 22 at 9.) Defendants move to dismiss on the basis that Plaintiff has failed to state a claim and, alternatively, that the individual Defendants are entitled to qualified immunity.

To "assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (quoting *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004)). "An essential principle of due process is that a deprivation of life, liberty or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). At this stage of the proceedings, Defendants do not assert that Plaintiff lacks a protected property interest in his continued employment. To determine whether a property interest in continued employment exists, the court looks to state law. *See Ney v. City of Hoisington, Kan.*, 508 F. Supp. 2d 877, 894 (D. Kan. 2007). Under Kansas law, there must be an express or implied contract to show a property interest in continued employment. *Id.* at 893. Plaintiff alleges that he was a member of the union and had a property interest in continued employment. (Doc. 18 ¶ 49.) At this stage of the proceeding, the court will assume that Plaintiff has a property interest. Therefore, he must be afforded process before that property interest is terminated.

The "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Loudermill*, 470 U.S. at 542. This means that Plaintiff must have an opportunity to be heard at a meaningful time and manner before termination. *Langley v. Adams County, Colo.*, 987 F.2d 1473, 1480 (10th Cir. 1993). Based on Plaintiff's allegations, the City utilized a process that involved a hearing prior to his termination. For government employees, a hearing requires 1) "oral or written notice [to the employee] of the charges against him"; (2) "an explanation of the employer's evidence"; and (3) "an opportunity [for the employee] to present his side of the story." *Riggins*, 572 F.3d at 1108. "A full evidentiary hearing is not required prior to an adverse employment action." *Id.* (quoting *West v. Grand Cty.*, 967 F.2d 362, 367 (10th Cir. 1992)). Instead, the "individual entitled to due process protection needs only to be given notice and an opportunity to respond." *Id.*

Here, it is clear that Plaintiff was provided notice of the allegations of workplace violations prior to the April 18, 2025 hearing. (*See* Doc. 1-9 at 2.) At the hearing, there was evidence presented regarding the alleged violations. Plaintiff also attended the hearing and had opportunities to be heard. Based on the allegations, Plaintiff was provided all the process that was necessary. *See Riggins*, 572 F.3d at 1109. Plaintiff, however, asserts that his due process rights were violated because Chavez denied his right to a union representative. However, that allegation concerns the investigation into prior misconduct and was not the investigation surrounding the misconduct that resulted in his termination. Further, the documentary evidence submitted by Plaintiff shows that Chavez believed that Plaintiff was no longer a member of the union and it was for this reason that she informed Plaintiff that he would not have representation. (Doc. 1-15 at 2.) Plaintiff was also told that he could correct this assumption if it was incorrect. With respect to his termination proceeding, however, Plaintiff fails to allege that he was deprived of his right to a

10

union representative. Notably, Plaintiff did have union representation at the hearing. (Doc. 1-12 at 2.)

Next, Plaintiff contends that Chavez was biased in the investigation. The facts concerning this bias involve the denial of a union representative, an alleged failure to investigate, and falsified reports about the video. As discussed, Plaintiff was not denied a union representative during the hearing. Further, Plaintiff fails to allege that Chavez's conduct prevented him from being heard at the hearing. Further, Perez, the decisionmaker, reviewed all of the evidence from the hearing, including the videos. (*Id.*) Therefore, to the extent that Plaintiff believes that Chavez somehow misrepresented the video evidence, Perez stated that he reviewed the videos prior to making his decision. (Doc. 1-12 at 2.) Therefore, the court finds that the allegations regarding Chavez do not support a finding that the process given was inadequate.

Finally, Plaintiff asserts that he has been deprived of due process because he was terminated by Perez instead of by a neutral decisionmaker. Plaintiff was ultimately terminated by Defendant Perez after Foster resigned. Plaintiff asserts that a violation of due process occurred because there was not a final decision by the decisionmaker who was present at the hearing. Plaintiff, however, fails to point to any authority that the decisionmaker must be a particular individual. Rather, a plaintiff may establish a violation of due process if the decisionmaker was biased. *See Riggins*, 572 F.3d at 1113–14. Plaintiff's amended complaint fails to set forth any facts to show that Perez was biased in this matter. Rather, Plaintiff's allegations regarding Perez's actions are almost entirely conclusory. Further, Plaintiff's conclusory allegation that Perez approved his termination without reviewing the evidence is not supported by the evidence Plaintiff submitted in his filings. (Doc. 1-12 at 2.) Therefore, the court declines to consider it.

Based on the allegations and the exhibits Plaintiff attached to his original complaint, the court finds that Plaintiff received adequate process in connection with his termination. Therefore, his due process claim is dismissed.

### D. FMLA Claim against the Individual Defendants

The City also seeks to dismiss the remaining FMLA claim against the individual Defendants. The City asserts that individuals are not employers under the FMLA and stated that the Tenth Circuit had yet to address this issue. Contrary to Defendants' assertion, the Tenth Circuit has issued a ruling on this issue earlier in the year. *See Walkingstick Dixon v. Okla. ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321 (10th Cir. 2025). In that matter, the Tenth Circuit held that the FMLA's "plain language applies to individuals because [the statute] defines 'employers' to include '*any person* who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.'" *Id.* at 1342 (citing 29 U.S.C. § 2611(4)(A)(I)). The court also notes that *Walkingstick* involved a public entity; therefore, it is clear that this authority applies here. When determining whether an individual is an employer under the FMLA, the court is to apply the economic reality test. *Id.* Although Defendants do not address this test, they do assert that the amended complaint fails to show how they would be liable in their individual capacities. The court will turn to the factors in the test. To determine whether an individual is an employer under the economic reality test, courts consider "a nonexclusive and overlapping set of factors," including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016); *see also Walkingstick*, 125 F.4th at 1342 (citing to *Graziadio* for the application of the test).

Turning to Chavez, Plaintiff has alleged that she is an investigator with the City and that she was involved in the investigations at issue. Although he argues that she has interfered with his FMLA rights, he fails to address whether she could be considered his employer under the FMLA. The amended complaint fails to allege any facts that are related to the factors the court considers in the economic reality test. Therefore, the motion to dismiss the FMLA claims against Chavez is granted.

Next, Davis is the Director of Utilities and recommended Plaintiff's termination. Plaintiff asserts that she is liable because she placed Plaintiff on administrative leave. The amended complaint is limited on facts regarding Davis's status as an employer. Based on the allegations, it is clear that she needed permission to terminate Plaintiff and did not have that authority on her own. Further, there are no allegations that she controlled Plaintiff's schedule, determined his rate of pay, or maintained employment records. After review, the court finds that Plaintiff has not plausibly alleged facts that would support a finding that Davis was Plaintiff's employer.

Finally, Perez is the City Manager. He approved Plaintiff's termination after reviewing the evidence from the hearing. Other than approving the termination, there are no facts regarding Perez's role in Plaintiff's employment. While Perez can fire employees, there are no allegations that he controlled Plaintiff's schedule or conditions of employment, determined his rate of pay, or maintained employment records. Therefore, Plaintiff has not plausibly alleged that Perez was an employer under the FMLA.

Plaintiff's remaining FMLA claim against the individuals is dismissed.

**IV.   Conclusion**

Defendants' motion to dismiss (Doc. 20) is GRANTED IN PART and DENIED IN PART. It is denied only with respect to Plaintiff's FMLA retaliation claim against the City. It is granted as to all other claims and the individual Defendants are dismissed from this matter.

Plaintiff's motion to supplement (Doc. 24) is DENIED.

IT IS SO ORDERED. Dated this 16th day of January 2026.

                                            __ s/ John Broomes_____
                                            JOHN W. BROOMES
                                            CHIEF UNITED STATES DISTRICT JUDGE